**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DARLENE MURPHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 07 C 4565 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| CITY OF CHICAGO, a municipal corporation, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before this Court are defendant City of Chicago's ("Defendant" or "City") motion for summary judgment against plaintiff Darlene Murphy ("Plaintiff" or "Murphy"), and Plaintiff's motion for summary judgment against Defendant. For the reasons set forth below, Plaintiff's motion for summary judgment is DENIED, and Defendant's motion for summary judgment is DENIED.

**FACTS**

Plaintiff is a former employee of Defendant, working at the City Department of Streets and Sanitation ("Department"). Defendant hired Plaintiff on June 14, 2000 as a Cashier in the Department. On or about April 16, 2001, Plaintiff was appointed to the position of

Administrative Assistant II in the Department's Bureau of Electricity. In February 2005, Plaintiff became a property custodian in the Department's Bureau of Traffic Services. On April 1, 2005, Plaintiff was appointed to the position of Hand Laborer in the Department's Bureau of Street Operations. As a Hand Laborer, Plaintiff reported to Joseph Chojnowski.

On May 1, 2006, Plaintiff was promoted to the position of probationary career service Sanitation Laborer in the Department's Bureau of Sanitation. As a probationary laborer, Plaintiff was a member of Laborers Local 1001 union and covered by the terms of the applicable collective bargaining agreement. Plaintiff was provided with a copy of the Collective Bargaining Agreement between Locals 1001, 1092 and 76 of the Laborers International Union of North America and the City of Chicago ("CBA") when she became a Hand Laborer.

In the position of Sanitation Laborer, Plaintiff's job responsibility was to work on a garbage truck. Plaintiff was assigned to the 25th Ward and reported to Ward Superintendent Vincent Sanchez in May 2006. Plaintiff held this position of laborer at the time of her termination in August 2006.

Plaintiff's Request for Leave of Absence

Plaintiff requested FMLA leave in August 2002 because of an injury she sustained in a car accident. At that time, Plaintiff was employed by the Department as an Administrative Assistant II. In or around August 2002, Plaintiff completed, signed and submitted the FMLA LOA application, as well as the LOA form. On August 27, 2002, Plaintiff received a letter from the Department indicating that she qualified for FMLA leave at the time of her request. Plaintiff's request to take FMLA leave was approved on August 28, 2002 and lasted

approximately one month from August 2002 to September 2002. Subsequent to August 2002, Plaintiff has not submitted any FMLA LOA applications.

In September 2004, Plaintiff received a three-day suspension for excessive absenteeism. The basis for the suspension was that Plaintiff had missed 44 days without pay as of September 1, when the suspension was issued.

In July 2005, Plaintiff claims that she informed Craig Dorsey, her crew chief, that she had throat infections and that she might want to take an FMLA LOA. Dorsey was himself a laborer with no authority to make decisions with respect to the LOA. Plaintiff asked Dorsey to look into whether she was eligible to receive it. The condition which Plaintiff contends warranted an FMLA LOA was a peri-tonsillar abscess. Plaintiff claims this was diagnosed in early 2005; Defendant claims this condition was diagnosed in January 2006 by Dr. Levy. Dr. Levy described the symptoms of peri-tonsillar abscess to include fever, swelling, and anorexia. Dr. Levy noted that Plaintiff was showing symptoms in August 2005, which led to recurrent episodes of inflection that needed to be cleaned out through an invasive, surgical procedure. Dr. Levy referred Plaintiff to Dr. Daniel Kurtzman, a nose and throat specialist. Dr. Kurtzman diagnosed Plaintiff with recurrent peri-tonsillar abscess.

Plaintiff submitted a note to Craig Dorsey, who worked under Chojnowski, on a prescription pad from the office of Dr. Levy dated January 25, 2006. The note stated that on January 23, 2006, Plaintiff had a procedure to drain the peri-tonsillar abscess. The note also stated that Plaintiff would have a surgical procedure on February 3, 2006. The note requested that she be excused from work until January 30, 2006. Plaintiff did not have the surgery that was referenced in the January note. The dates of January 23 through January 25, 2006 were coded as

vacation days in Plaintiff's time and attendance record and were not counted against her as unexcused absences.

At some point, Plaintiff claims that she requested three to five days off from Joseph Chojnowski, the Program Director of the Neighborhood Enhancement Program in the Department of Streets and Sanitation. Plaintiff did not ask Chojnowski for an FMLA leave. However, Plaintiff claims she spoke to Chojnowski about FMLA leave. Chojnowski does not recall that Plaintiff ever told him she needed three to five days off to have medical treatment done on her throat.

On February 16, 2006, Plaintiff went to see Dr. Kurtzman for a preoperative examination. Dr. Kurtzman had scheduled a surgery for Plaintiff on February 24, 2006. Dr. Kurtzman gave Plaintiff a signed doctor's note. The note stated that Plaintiff "has had recurrent throat abscesses four times this year, needs to have a small tonsillar remnant removed to prevent her from getting sick again. Surgery is 2/24." Plaintiff did not go through with the surgery.

In May 2006, the 25th Ward Office, where Plaintiff was assigned, received notes requesting Plaintiff be excused from work on June 5, 2006 and July 13 and 14, 2006. Dr. Levy explained that while his staff wrote notes to excuse Plaintiff for work on those dates, she was not treated or seen by anyone in his office for a medical reason on these dates: January 25-30, 2006; October 25-29, 2005; November 4, 2005; January 31, 2006; April 12-13, 2006. Dr. Levy admitted that those notes were written because Plaintiff requested the notes to excuse her from work on those dates.

Plaintiff claims that she verbally requested an FMLA leave from Vincent Sanchez in June or July 2006, because she would need surgery on her throat. At this time, Sanchez was the 25th

Ward Superintendent. Plaintiff did not request or submit a LOA form to Sanchez or any other employee in the Department requesting an FMLA LOA. Plaintiff did not provide Sanchez with a doctor's note documenting her medical condition. Plaintiff claims that Sanchez told her she was not entitled to take a LOA. As a Ward Superintendent, Sanchez was not authorized to approve or deny employee requests to take time off for a medical leave.

In July 2006, Plaintiff received and signed an oral reprimand from Vincent Sanchez for missing three "sick no pay" days in the quarterly months of April 3 through June 20, 2006. Defendant claims Plaintiff did not explain to Sanchez the reason that she missed those three days. Plaintiff claims that she presented Sanchez with a doctor's note stating she needed surgery and needed FMLA leave. Plaintiff asserts that when she was sick, she gave her doctor's notes to Sanchez's clerk who went by the nickname "Skippy." Plaintiff claims that she provided the Defendant with a doctor's note on every day she was absent from work.

On August 14, 2006, Plaintiff was terminated from her position, because she had 24 "unexcused" absences between January 2005 and August 16, 2006. Defendant asserts that Plaintiff's absences were counted as unexcused because Plaintiff was not entitled to take sick days off without having an FMLA-approved leave request on file. Further, Plaintiff did not provide letters from her doctor on official letterhead to document that she was off work due to a medical condition. Plaintiff denies that her absences were unexcused, because she provided a doctor's note on every day she was absent from work.

Plaintiff's Termination

A review of the time and attendance records of the Department's career service laborers was initiated to determine whether there was excessive absenteeism during the period of January 1, 2005 through August 2006. Tenaya Williams, an Assistant Commissioner in the Department's Legal Section, reviewed the computer-generated attendance records (Kronos records) and the prior disciplinary records of certain employees who were considered for possible discharge for excessive absenteeism. Kronos records are the computer-generated time and attendance records maintained by the operating departments of the Defendant. The attendance records are snapshots of the employees swiping in and out. Williams used these records to determine whether the employee had a pattern of unexcused absenteeism. In addition, Williams determined whether the employees were approved for the FMLA leave.

Williams reviewed Plaintiff's Kronos records and her discipline history, and verified that she did not have an FMLA approved LOA request on file. Plaintiff, together with eight other Probationary Laborers, was discharged effective August 15, 2006 for having excessive absenteeism during the period of January 1, 2005 to August 2006.

Subsequent to her termination, Plaintiff provided Defendant with a doctor's note written by Dr. Levy on a prescription pad from Dr. Kurtzman's office dated August 16, 2006, explaining that Plaintiff had recurring episodes of a posterior pharyngeal abscess on certain dates, and requested that she be excused from those dates. Dr. Levy admitted that although he requested that Plaintiff be excused from work on those dates, he did not have personal knowledge of whether she was actually ill on those dates because on many of the dates she was not seen at his office for the condition referenced in the note.

Williams did not consult or notify Vincent Sanchez about the decision to terminate Plaintiff prior to issuing notification to Plaintiff of termination. Sanchez was not aware that Plaintiff was going to be terminated prior to August 14, 2006, the effective date of the termination.

Plaintiff's Allegation

On August 14, 2007, Plaintiff filed a two-count Complaint in the present case. In Count I, Plaintiff claims that Defendant violated the FMLA by knowingly interfering, restraining, and denying Plaintiff's request to exercise her right to take a medical leave pursuant to the leave provisions of the FMLA. Plaintiff claims that Defendant interfered with her right to take medical leave under the FMLA on two occasions. First, she claims that, during the time she worked as a Hand Laborer, Defendant refused to allow her to take time off to undergo throat surgery allegedly scheduled for February 24, 2006. Second, in June or July of 2006, while working as a Sanitation Laborer, Plaintiff claims that when she requested FMLA leave from her supervisor, she was told she was not entitled to take medical leave. Plaintiff claims that each of these occurrences establishes that she is entitled to summary judgment on her interference claim. In Count II of the Complaint, Plaintiff claims Defendant retaliated and discriminated against Plaintiff by terminating her employment for taking FMLA leave.

**LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, along with any affidavits, show there is no genuine issue

of fact. Such a showing entitles the moving party to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 720 (7th Cir. 2004). A genuine issue of material fact exists only when a reasonable factfinder could find for the nonmoving party, based on the record as a whole. The court does not weigh the evidence and it does not make credibility determinations. Instead, the court makes all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). If a party fails to present proof on an essential element of his or her case, then all other facts become necessarily immaterial. *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 509 (7th Cir. 1999).

**ANALYSIS**

Plaintiff raises two claims against the Defendant under the Family and Medical Leave Act ("FMLA"): that Defendant interfered with her substantive rights under the FMLA, and that Defendant retaliated against her for attempting to exercise her FMLA rights.

**I. FMLA Interference**

The FMLA entitles eligible employees to take unpaid leave for up to twelve weeks in any twelve-month period because of a "serious health condition" that prevents them from performing the function of their position. 29 U.S.C. § 2612(a)(1)(D). The Act prevents employers from refusing to reinstate or discriminating against an employee who takes valid leave. *Id.* §§ 2614(a)(1), 2615(a)(2); *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741 (7th Cir. 2008). The FMLA also makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or

the attempt to exercise, any right provided" under the Act. 29 U.S.C. § 2615(a)(1); *Lewis*, 523 F.3d at 741.

To prevail on a claim that an employer has interfered with FMLA rights, an employee must prove that: (1) she was eligible for the FMLA, (2) her employer was covered by the FMLA, (3) she was entitled to FMLA leave, (4) she provided her employer with notice of her intent to take FMLA leave, and (5) the employer denied her FMLA benefits to which she was entitled. *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). Defendant does not dispute that Plaintiff satisfies prong (1), (2) and (3) under *Burnett.*

There is also a timeliness requirement. An employee must provide thirty days notice if the need for leave is foreseeable. 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 825.302(a). If thirty days notice is not possible, "notice must be given as soon as practicable." 29 C.F.R. § 825.303(a); s*ee also Aubuchon*, 359 F.3d at 952. This normally means that an employee should give her employer notice within one or two business days of learning of the need for leave. 29 C.F.R. § 825.303(a).

*A. Prong (5): FMLA Denial*

Defendant moves for summary judgment on the ground that Plaintiff has failed to establish that she properly requested FMLA leave and was denied the leave. Plaintiff moves for summary judgment on the ground that she has established all five prongs under *Burnett*, including employer denial of her FMLA benefits. From the evidence presented, Plaintiff has not proved prong (5) as to either the February 24, 2006 alleged interference or the June or July 2006 alleged interference. As to the February 24, 2006 incident, Plaintiff seems to argue that she asked Chojnowski for three to five days off for her February 24, 2006 throat surgery, and he denied her

the leave. As an initial matter, it is unclear from Plaintiff's deposition when this conversation with Chojnowski took place. According to the chronological placement of this fact in Plaintiff's Statement of Facts, it appears that Plaintiff is asserting that this conversation with Chojnowski occurred sometime in February 2006, and the leave requested was for a surgery on her throat scheduled to take place on February 24, 2006. However, Plaintiff does not specify in her deposition that this conversation with Chojnowski took place in February 2006. Defendant asserts that Plaintiff requested three to five days off from Chojnowski in August 2005, but this court finds no support of this contention in the provided citation.

In any event, even if Plaintiff did ask for the three to five days off for the alleged February 24, 2006 interference, the evidence does not establish conclusively that Chojnowski denied Plaintiff the leave. According to the Plaintiff, when she asked for the three to five days off, Chojnowski told her that if she continued to take three to five days off regularly, she would be fired. It is unclear that this is a denial. A reasonable jury may find that the statement was not a denial of her specific request, but merely a statement against future requests. Summary judgment is thus denied to Plaintiff on the February 24, 2006 incident.

The fact that a reasonable jury *may* find that the statement was not a denial, does not mean the statement is *certainly* not a denial, as would be required to grant Defendant summary judgment on this issue. Construing the evidence in the light most favorable to the Plaintiff, it is possible that a reasonable jury may also find that this assertion amounted to a constructive denial, whereby the Plaintiff understood that if she did take the three to five days off, she would be fired. Thus, there are genuine issues of material fact as to when Plaintiff requested leave, and whether or not Chojnowski's alleged response constitutes a denial.

Further, because the evidence does not provide the date that Plaintiff requested her leave for the February 24, 2006 surgery, this court cannot determine whether the request was made in a timely manner pursuant to 29 C.F.R. § 825.303(a).

As to the alleged June or July 2006 interference, Plaintiff claims that she verbally requested FMLA leave from Sanchez, her supervisor at the time, stating that she needed to undergo throat surgery. Plaintiff claims that Sanchez told her she was not eligible for medical leave. Defendant disputes that this alleged conversation took place. In his deposition, Sanchez does not recall Plaintiff requesting FMLA leave. Further, it is undisputed that Plaintiff did not submit any written request to Sanchez for FMLA leave. Because the parties dispute whether Plaintiff requested FMLA leave from Sanchez and whether Sanchez denied Plaintiff the leave, there is a genuine issue of material fact as to whether Plaintiff established prong (5) under *Burnett*.

### B. Prong (4): Notice

Defendant moves for summary judgment on the grounds that Plaintiff cannot establish that she provided the City with sufficient notice of her intent to take leave, as required by prong (4) under *Burnett*. Plaintiff asserts that she did provide sufficient notice. Specifically, Plaintiff argues that her communications to Dorsey and Chojnowski, together with her doctors' notes, gave notice to Defendant of her serious health condition and her need to take time off for surgery on February 24, 2006. Plaintiff also argues that she gave sufficient notice to Sanchez in June or July, 2006 when she verbally requested FMLA leave and told him that it was for her throat surgery.

The FMLA's notice requirements "are not onerous" and are satisfied when an employee provides her employer with information sufficient to show that she "*likely* has an FMLA-qualifying condition." *Burnett*, 472 F.3d at 478-79 (stating that notice is sufficient when employee provides employer with probable basis that FMLA leave applies). Although no categorical rules exist that define adequate notice, the employee needs to make it clear that the condition is serious. *Id.* at 479. She need not explicitly mention the FMLA in her request, but simply asserting that one is "sick" is insufficient to notify an employer that FMLA leave may be warranted. *Id.* at 478; *Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 312 (7th Cir. 2006). Even if an employee has a serious medical condition, she may not fulfill the notice requirement if she does not communicate to her employer that sufficient grounds for FMLA leave exist. *Aubuchon v. Knauf Fiberglass, GMBH*, 359 F.3d 950, 953 (7th Cir. 2004) (holding that employer properly denied FMLA leave when employee merely requested leave without explaining that his wife was experiencing complications during pregnancy). On the other hand, an employee who repeatedly tells her employer that she is sick and is undergoing medical tests has given the employer sufficient notice of a pattern and progression of her sickness that may necessitate medical leave. *Burnett*, 472 F.3d at 480 (holding that plaintiff did not have to tell employer he had prostrate cancer to give notice that his condition was serious).

Once an employee puts an employer on notice of a probable basis for FMLA leave, the duty shifts to the employer to request any information necessary to confirm the employee's entitlement to that leave. *Aubuchon*, 359 F.3d at 953. If the condition is unforeseeable, an employer may require an employee to complete a certification form, but the employee must have "at least 15 calendar days in which to submit it." 29 C.F.R. § 825.305(b); *Rager v. Dade*

*Behring*, 210 F.3d 776, 777 (7th Cir. 2000). Moreover, an employer may not "disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice," regardless of whether the notice complies with its usual and customary requirements. 29 C.F.R. § 825.302(d).

Dorsey

In July 2005, while working as a Hand Laborer, Plaintiff claims that she notified her crew chief, Dorsey, that she had throat infections and might need to take an FMLA leave of absence. She claims that she asked Dorsey to look into whether she was eligible for leave. Plaintiff argues that because Dorsey was her supervisor, her conversations with him constituted notice to her employer of a serious health condition for which she requested days off in February 2006. First, based on the facts presented, it is unclear whether Dorsey was Plaintiff's supervisor or simply a coworker. Second, Plaintiff claims that she told Dorsey that she "kept getting throat infections" and "was burning up with fever." Murphy Dep. p. 45. The Seventh Circuit has held that "an employee is entitled to FMLA leave if (1) he is afflicted with a "serious health condition" and (2) that condition renders him unable to perform the functions of his job." *Burnett v. LFW Inc*., 472 F.3d 471, 477-78 (7th Cir. Ill. 2006). Further, a "serious health condition" is an "an illness, injury, impairment, or physical or mental condition that involves--(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *Id.* at 478. In the present case, even if Dorsey was in fact Plaintiff's supervisor, Plaintiff's assertions that she had throat infections and was burning up with fever, without any indication that she had been seen by a doctor in July 2005 or had been to

a hospital or medical care facility even once, is insufficient to put Dorsey on notice that she had a "serious health condition" requiring inpatient care or continuing treatment by a healthcare provider under *Burnett*. Plaintiff's assertions that she had throat infections and a fever, without more, are more analogous to mere references of being "sick," which the Seventh Circuit has found to be insufficient to put the employer on notice of a probable basis for FMLA leave. *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720 (7th Cir. Ill. 2007); *Aubuchon v. Knauf Fiberglass, GMBH*, 359 F.3d 950 (7th Cir. Ind. 2004). The evidence presented shows that Plaintiff did not put Defendant on notice of a "serious health condition" in July 2005 through her communications with Dorsey. Thus, pursuant to Federal Rule of Civil Procedure 56(d), this court finds that Plaintiff did not establish sufficient notice of a serious health condition in her communications with Dorsey in July 2005.

Chojnowski

In her alleged conversation with Chojnowski, where she allegedly asked for three to five days off, Plaintiff did not tell Chojnowski that she had a throat infection, or that she needed the time off for throat surgery. Plaintiff merely said that she was sick and needed time off. This in itself does not put Chojnowski on notice that Plaintiff had a serious health condition. See *Aubuchon v. Knauf Fiberglass, GMBH*, 359 F.3d 950 (7th Cir. Ind. 2004). However, Plaintiff further argues that Chojnowski was put on notice of her serious health condition through her doctor's note, dated January 25, 2006. The note was faxed to Chojnowski's office, and Chojnowski admits to having it in his files. That note, on Dr. Levy's letterhead, stated that Plaintiff had been seen in the emergency room for peri-tonsillar abscess on January 21, 2006,

was to be excused from work until January 30, 2006, and was to have a surgical procedure on February 3, 2006. This note does suggest that Plaintiff's condition was a serious health condition, as it stated that Plaintiff required inpatient care and would be unable to work for a week. *Aubuchon v. Knauf Fiberglass, GMBH*, 359 F.3d 950 (7th Cir. Ind. 2004); *Burnett v. LFW Inc.*, 472 F.3d 471, 477-78 (7th Cir. Ill. 2006). However, this note indicated that Plaintiff was to have surgery on February 3, 2006, not on February 24, 2006. Despite this date discrepancy, the dates are sufficiently close such that the January 25, 2006 note may have been sufficient to notify the Defendant that there was a probable FMLA basis for Plaintiff's subsequent request for leave around February 24, 2006, such that the burden would shift to the Defendant to inquire whether Plaintiff was entitled to FMLA leave. There are, however, genuine issues of material facts in dispute, in particular whether and when Plaintiff asked for leave and whether Chojnowski denied leave. If Plaintiff did not request leave in February 2006, the issue of notice to Chojnowski in February 2006 may be moot for this issue.

Doctor's Notes

In addition to the January 25, 2006 doctor's note, Plaintiff seems to argue that Defendant was put on notice for her serious health condition through various other doctor's notes, which showed that she was obtaining "continuing treatment by a health care provider," satisfying the serious health condition requirement under 29 U.S.C. § 2611(11). "Continuing treatment by a health care provider" can be established by showing, *inter alia*, a period of incapacity (i.e. inability to work) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, where there was treatment two or more times

-15-

by a health care provider. 29 C.F.R. §825.114(a)(2)((i)(A). The Seventh Circuit held that evidence "in the form of multiple doctor's visits or continuing medication" is sufficient to show multiple treatment. Plaintiff provided doctor's notes to excuse her from work on October 25-29, 2005 and November 4, 2005. The doctor's note, with Levy's name in the letterhead and dated October 31, 2005, stated "Darlene was seen in our office and ER. She was off work 10/25 until 10-29." The note dated November 7, 2005 on similar letterhead, read, "Darlene Murphy was under our care. Excuse her from work 11-4-05." The doctors' notes for October and November 2005 do not explain why Plaintiff needed medical attention. Plaintiff claims that these doctors visits were for her throat condition, and Dr. Levy testified that Plaintiff's throat condition began showing symptoms in August 2005, which led to recurrent episodes of infection. There remains a genuine issue of material fact as to whether the October and November doctors visits concerned her throat infection and peri-tonsillar abscess, such that together with the January 25, 2006 episode, they constitute "continuing treatment by a health care provider" as required to show a serious health condition.

As to Plaintiff's alleged request for FMLA leave in June or July 2006 from Sanchez, if Plaintiff did in fact request FMLA leave and specifically told Sanchez that she needed the leave for throat surgery, then this constitutes sufficient notice. In *Aubuchon,* the Seventh Circuit held that it was not enough for an employee to inform his employer he needed leave because his wife was pregnant, but if he had said his wife was having "complications," that "would have sufficed." 359 F.3d 950 (7th Cir. Ind. 2004). If Plaintiff not only said she was sick or had a throat infection, but specifically stated to Sanchez that she needed throat *surgery*, this signals inpatient care and is sufficient to put Defendant on notice that she has a probable basis for FMLA leave.

-16-

However, because it is unclear that this conversation took place, this issue cannot be resolved at this time.

For the foregoing reasons, summary judgment is denied to both Plaintiff and Defendant as to the February 24, 2006 alleged FMLA interference.

**II. Retaliation**

In addition to the substantive guarantees, the FMLA also affords employees protection against retaliation for exercise of FMLA rights. 29 U.S.C. § 2615(a)(1) & (2). In making out a charge of retaliation under the FMLA, a plaintiff may proceed under the direct or indirect methods of proof. *Burnett*, 472 F.3d at 471, 481. Under the direct method, a plaintiff must present evidence that his employer took materially adverse action against her on account of her protected activity. *Id*. To proceed under the indirect method, Plaintiff must show that "after taking FMLA leave he was treated less favorably than other similarly situated employees who did not take FMLA leave, even though he was performing his job in a satisfactory manner." *Id*. At 482.

Plaintiff moves for summary judgment on the retaliation claim under the direct method of proof. The reason given by Defendant for terminating Plaintiff is that she had "an irregular or excessive absence or tardiness record or a pattern of repeated absence or tardiness at a specific time or on specific days of the week or month or in relation to holidays." Plaintiff contends that all her recorded "unexcused" absences were due to seeing the doctor for her throat condition, and because this condition qualifies for FMLA protection, her termination on the basis of these absences violates the FMLA. Plaintiff has not presented enough evidence to establish that her

alleged "unexcused" absences were all due to a FMLA protected reason, namely her throat condition. Most of the doctor's notes presented by Plaintiff say nothing about her medical condition, much less a throat condition. In addition to the October and November 2005 notes discussed above, Plaintiff's note dated June 13, 2006 on Levy's letterhead, stated, "Darlene was ill on June 5, 2006. Please excuse her form work that day." Similarly, the July 13-14, 2006 note read, "was seen...in office today, please excuse from work 7/13-7/14." The evidence is simply not sufficient to show that all of Plaintiff's absences were due to a FMLA protected condition. As such, it is unclear whether Plaintiff's termination was due to discrimination against her FMLA protected leave and Plaintiff's motion for summary judgment is denied.

Defendant moves for summary judgment on the retaliation claim on the ground that Plaintiff cannot prove under the direct or indirect methods that she was terminated for exercising FMLA protected activity by taking sick leave. Although the evidence is not clear as to whether Plaintiff's doctor's notes all refer to her throat condition, a reasonable jury may infer that if Plaintiff's January 25, 2006 note notified Defendant of a serious health condition, which was not cured immediately, the doctors' notes before and after may have also been written for that same serious health condition. If this is the case, or if Plaintiff can clarify that the doctors' notes were all regarding her throat condition, then Plaintiff may prove retaliation by the direct method. The Seventh Circuit has held that where absenteeism is the reason for termination, and the absences are FMLA protected leave, there is sufficient direct evidence to prove retaliation. *Lewis v. School District #70*, 2008 U.S. App. LEXIS 8248 (7th Cir. 2008). In the present case, Plaintiff was terminated from her position, because she had 24 "unexcused" absences between January 2005 and August 16, 2006. Thus, the reason proffered by Defendant for her termination is her

unexcused absences. If these absences were in fact FMLA protected leave, there is direct evidence of FMLA violation. Because it is unclear from the facts presented whether Plaintiff's absences fall under FMLA protection, the question of retaliation cannot be answered at this time. Defendant's motion for summary judgment as to the retaliation claim is denied.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar

United States District Judge

Dated: **July 18, 2008**